# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

**CHAMBERS OF**
**SUSAN K. GAUVEY**
**U.S. MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**MDD_skgchambers@mdd.uscourts.gov**
**(410) 962-4953**
**(410) 962-2985 - Fax**

<u>CORRECTED LETTER OPINION</u>

February 10, 2011

Scott B. Baron, Esq.
Hochberg, Costello and Baron
528 East Joppa Road
Towson, MD 21286

Allen F. Loucks, Esq.
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, MD 21201

  Re: L. Hall v. Michael J. Astrue, Commissioner, Social
    Security, Civil No. SKG-09-1086

Dear Counsel:

  Plaintiff, L. Hall, by her attorney, Scott B. Baron, Esq.,

filed this action seeking judicial review of the final decision

of the Commissioner of the Social Security Administration ("the

Commissioner"), pursuant to 42 U.S.C. § 405(g) & 1383(c)(3),

affirming termination of her Supplemental Security Income

("SSI") benefits under section 1631(c)(3) of the Social Security

Act.

This case has been referred to the undersigned magistrate judge by consent of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule 301. (ECF No. 6; ECF No. 13). Currently pending before the Court are cross motions for summary judgment. (ECF No. 14; ECF No. 20). No hearing is necessary. Local Rule 105.6. For the reasons that follow, the Court hereby GRANTS in part plaintiff's Motion for Summary Judgment (ECF No. 14), DENIES defendant's Motion for Summary Judgment (ECF No. 20), and REMANDS to the ALJ for further consideration in accordance with this opinion.

## I. Procedural History

On July 28, 2000, the Social Security Administration ("SSA") found plaintiff to be disabled under section 1614(A)(3)(A) of the Social Security Act and awarded her SSI benefits. (R. 95). The status of plaintiff's disability is not at issue. On November 10, 2005, the Towson District Office of the SSA informed plaintiff that her SSI benefits would be terminated as of December 2005 on the grounds that her income had exceeded statutory limits from April 2003 forward. (R. 424-458). Plaintiff filed a request for reconsideration of the SSA's decision on November 16, 2005. (R. 459-460). On November 28, 2005, the SSA denied plaintiff's request based on a finding that plaintiff had used funds from a trust account for her

personal support in the absence of a *bona fide* loan agreement
for repayment. (R. 461-463).

Upon denial of her request for reconsideration, plaintiff
requested a hearing by Administrative Law Judge ("ALJ"). (R.
469-470). After holding a hearing on May 8, 2007, ALJ William
F. Clark affirmed the SSA's termination of plaintiff's SSI
benefits, finding that the funds loaned to plaintiff constituted
unearned income and were countable resources within the meaning
of the Social Security Act. (R. 17-19). The Appeals Council
denied plaintiff's request for review on March 26, 2009, thereby
rendering the ALJ's opinion the final decision of the agency.
(R. 8-11). Plaintiff now seeks review of that final decision
pursuant to 42 U.S.C. § 405(g).

## II. Factual Background

Plaintiff has, for the purposes of SSA, been disabled since
July 2000. (R. 95). Since that time, she has engaged in
vocational rehabilitation with the goal of working again in the
"competitive work environment." (R. 744-746). Several
individuals have supported plaintiff's efforts by providing her
with money, goods, or services since at least 1999. For
example, plaintiff's mother, Ms. Shirley Stewart, wrote
plaintiff checks totaling more than $97,000.00 between 2002 and
2007. (R. 675-735). In addition, a family friend, Mr. Charles
Talar, paid many of plaintiff's expenses, including rent,

3

certain utilities, educational and automotive costs, credit card
debt, and principal and interest costs associated with another
loan.  Though the record is unclear as to the exact amounts of
these expenses, Mr. Talar apparently provided support to
plaintiff during a period lasting at least from 2001 to 2006.
(R. 748-752).  From 1999 until 2004, Ms. Mary-Ann White, an
administrative assistant, provided plaintiff with services
valued in excess of $60,000.  (R. 753-756).  Similarly, Ms.
Trudy Koslow, a vocational rehabilitation consultant, provided
plaintiff with services valued at approximately $40,000 between
2002 and 2007.  (R. 742-746).

    Plaintiff executed a document titled "Loan Agreement" with
each of the aforementioned individuals.  (R. 663, 742, 748,
753).  The language of each of the four purported loan
agreements is nearly identical.  The first paragraph of each
written agreement states, "I, L. Hall, agree to reimburse [the
lender], who has loaned me money. . . ." (R. 663, 742, 748,
753).

    The second paragraph of plaintiff's agreements with Mr.
Talar, Ms. White, and Ms. Koslow states, "I commit to repay the
entire loan, including any future indebtedness, from such
proceeds as I receive from employment as and when I reenter the
competitive work environment; settlement of the matters pending
before the State of Connecticut Appellate Court in connection

with violations of my person, my property and my privacy; and/or
such inheritance as I may receive in the event that my Mother,
Shirley Stewart, predeceases me." (R. 742, 748, 753). The final
clause regarding inheritance is omitted from the loan agreement
between plaintiff and her mother, Ms. Stewart. (R. 663).

Finally, the third paragraph of each agreement references
attachments, including an affidavit and either "an accounting of
the amount of the loan to date" or, in the case of plaintiff's
agreement with Ms. Stewart, copies of checks received. (R. 663,
742, 748, 753). Each purported loan agreement is accompanied by
a writing signed by the lender acknowledging plaintiff's debt.
(R. 664, 743, 749, 754).

The Court adopts defendant's Statement of Facts as to
plaintiff's application for a Plan to Achieve Self-Support
(PASS). (ECF No. 20, 5).

### III. ALJ Findings

In evaluating plaintiff's claim that the SSA erred when it
terminated her SSI benefits, the ALJ considered generally
"whether the claimant's income and resources exceed the
statutory limit for eligibility for Supplemental Security Income
monies." (R. 17). In order to resolve this issue, the ALJ
inquired specifically "whether monies loaned to the claimant
constitute unearned income and in-kind support pursuant to 20
C.F.R. 416.1120." (Id.). The ALJ noted that plaintiff, through

5

counsel, agreed that the hearing would resolve only "the question of income and resources" and that any eventual calculation of overpayment of benefits to plaintiff would be remanded to the SSA. (R. 17).

The ALJ reviewed plaintiff's written agreements with Ms. Shirley Stewart, Ms. Trudy Koslow, Mr. Charles Talar, and Ms. Mary-Ann White in order to determine whether the four "sources of funds" constitute countable income and resources under the SSI regulations. (R. 17-18). The ALJ specifically referenced language included in each of the written agreements, which states: "I commit to repay the entire loan, including any future indebtedness, from such proceeds as I receive from employment as and when I reenter the competitive work environment and/or settlement of [a pending lawsuit]." (R. 18). The ALJ did not discuss the underlying subject matter of each individual transaction in his evaluation of the evidence, but rather addressed the four transactions jointly. See (R. 17-18).

Citing Social Security Ruling 98-2p for the principle that a "contract must, among other things, contain an acknowledgement of an obligation to repay," the ALJ determined that the agreements at issue do not constitute *bona fide* loans in the context of the SSI regulations. (R. 18). The ALJ reasoned that the language quoted *supra* makes plaintiff's obligation to repay each of the four purported loans contingent upon improvement of

her financial circumstances.  Because "the cash payments were given without a legal obligation to repay," the ALJ reasoned, they are gifts pursuant to 20 C.F.R. 416.1121(g).  (Id.).  Based upon this analysis, the ALJ ultimately concluded that plaintiff had countable resources in excess of the statutory limit due to unearned income in the form of personal loans.  (Id.).

## IV. Standard of Review

The function of the Court on review is to leave the findings of fact to the agency and to determine upon the whole record whether the agency's decision is supported by substantial evidence, not to try plaintiff's claim de novo.  King v. Califano, 599 F.2d 597, 598 (4th Cir. 1979).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if the ALJ employed the proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3) (2001); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Substantial evidence "consists of more than a scintilla of evidence but may be somewhat less than a preponderance."  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig, 76 F.3d at 589; Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962). If the Commissioner's findings are supported by substantial evidence, this Court is bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

However, despite deference to the Commissioner's findings of fact, "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Bowen, 829 F.2d 514, 517 (4th Cir. 1987). The Court has authority under 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency "with or without remanding the case for a rehearing." Melkoyan v. Sullivan, 501 U.S. 89, 98 (1991).

## V. Discussion

On appeal, plaintiff asserts that the ALJ erred in finding that the monies and in-kind support at issue do not constitute *bona fide* loans, and that her income and resources therefore exceed statutory limits for the purpose of SSI eligibility.

(ECF No. 14-1, 6-10).  Plaintiff contends that the loans are *bona fide*, and therefore do not constitute countable income and resources, because they are enforceable under state law and impose an unqualified obligation of repayment.  (ECF No. 14, 7-9; ECF No. 25, 5-8).  Plaintiff emphasizes that the parties to each purported loan intended the agreements to be binding, and that the circumstances regarding repayment provided for in the agreements represent "a list of means by which the loan at issue will be repaid, rather than . . . conditions that must occur for the loans to be repaid." (ECF No. 25, 5). In addition, plaintiff contends that nothing limits the lenders' recovery to the listed sources, and that even if she never obtained the funds listed in the written agreements, "she would nevertheless remain obligated to the lenders."  Id. Finally, plaintiff suggests that her pledge of anticipated income should be characterized as evidence of her intent to repay the loans.  (ECF No. 31, 5).

Plaintiff argues in the alternative that the SSA should have exempted the cash and in-kind support at issue under the provision of a Plan to Achieve Self-Support (PASS).  (ECF No. 14, 10-12).  Plaintiff asserts that the SSA unjustifiably delayed processing and approving her PASS application, thereby causing support loaned to her for PASS-covered purposes to be mischaracterized as income. (ECF No. 14, 10-12).  However, the Court declines to consider plaintiff's PASS argument here as it

is confined to reviewing matters decided by the ALJ and cannot address issues outside the scope of his decision. <u>Securities and Exchange Commission v. Chenery Corp.</u>, 318 U.S. 80, 87 (1943).

In evaluating the ALJ's determination that plaintiff "had countable resources in excess of the statutory limit due to unearned income in the form of personal loans," this Court considers whether the purported loans at issue are properly classified as countable income and resources based upon the evidence in the record and, if so, whether the particular sum of plaintiff's income and resources from the purported loans exceeds statutory limits.

After careful evaluation of the record and the opinion of the ALJ as a whole, the Court finds that the ALJ erred by failing to: 1) consider the underlying subject matter of each written agreement independently in his analysis of the evidence; 2) apply the appropriate standard for determining whether the purported loan agreements are *bona fide* for SSI purposes; and 3) explain with particularity the basis for his calculation that plaintiff's income and resources exceed the statutory limit. Therefore, this Court REMANDS to the ALJ for further consideration and development of the record as necessary in accordance with this opinion.

**A. ALJ Classification of Plaintiff's Income and Resources**

An individual who is aged, blind, or disabled may be eligible to receive SSI benefits if his or her income and resources do not exceed statutory limits.[1]  20 C.F.R. § 416.1100. For the purpose of determining SSI eligibility and benefit amount, income is defined as "anything you receive in cash or in kind that you can use to meet your needs for food and shelter." 20 C.F.R. § 416.1102.  In this context, "[i]n-kind income is not cash, but is actually food or shelter, or something you can use to get one of those."  Id.  For example, an individual might use an in-kind item to get food and shelter through the sale or conversion of that item.  See POMS § SI 00810.020.  For SSI purposes, income also includes in-kind support and maintenance ("ISM"), which is defined as "any food or shelter that is given to you or that you receive because someone else pays for it." 20 C.F.R. § 416.1130 (b).

In addition to defining income, Social Security regulations provide a non-exhaustive list of items that are *not* income for SSI purposes.  See 20 C.F.R. § 416.1103.  For instance, "money you borrow or money you receive as repayment of a loan" is not income.  20 C.F.R. § 416.1103(f).  Resources are defined as "cash or any real or personal property that any individual (or

---

[1] The monthly income limit for an individual was $552.00 in 2003, $564.00 in 2004, and $579.00 in 2005.  See POMS §§ SI00835.900, SI00835.901.

spouse, if any) owns and could convert to cash to be used for his or her support and maintenance."  20 C.F.R. § 416.1210(a).

### 1. Underlying Subject Matter of the Purported Loan Agreements

At issue on appeal are four purported loans made to plaintiff while she was a recipient of SSI benefits, including advances of cash, goods, and services from Ms. Shirley Stewart, Ms. Trudy Koslow, Mr. Charles Talar, and Ms. Mary-Ann White. Although the language of the written agreements is nearly identical, the underlying subject matter of each transaction is distinct.  Despite the significance of this variation, the ALJ's opinion does not evaluate the purported loans individually.  As a result, the ALJ failed to address the threshold issue of whether each transaction would constitute countable income and resources for SSI purposes if transferred to plaintiff gratuitously.  Therefore, the Court directs the ALJ to determine on remand whether the underlying subject matter of each transaction constitutes income within the meaning of 20 C.F.R. § 416.1102 independent of whether it was conveyed by *bona fide* loan.

Based upon the Court's review of the record, this inquiry is more easily resolved with respect to some of transactions at issue than others.  For example, the record reflects that plaintiff received cash advances in the form of checks totaling

more than $97,000 pursuant to her agreement with her mother, Ms. Shirley Stewart. (R. 675-735). These payments presumably constitute income within the meaning of 20 C.F.R. § 416.1102 because plaintiff can use the cash to meet her needs for food and shelter. Thus, unless these payments represent a *bona fide* loan in the Social Security context, they constitute countable income for SSI purposes.

Distinguishably, plaintiff's agreement with Mr. Talar involves, *inter alia*, the transfer of money in connection with her pursuit of vocational rehabilitation goods and services, educational programs, and the necessities of shelter and utilities. (R. 748). In addition, a document titled "Supplement to Past, Present, and Future Obligations for L. Hall" and signed by Mr. Talar lists expenses for other items including, but not limited to, a public storage unit, automotive maintenance, and loan payments on plaintiff's behalf. (R. 750). It is clear that certain of these items, such as payments for rent and food (R. 750-51), constitute income unless advanced as a *bona fide* loan. See 20 C.F.R. § 416.1102. On the other hand, some items listed in the record, such as payments for educational courses, arguably do not constitute income even if conveyed gratuitously. (R. 748-52).

Pursuant to her agreements with Ms. Mary-Ann White and Ms. Trudy Koslow, plaintiff apparently received administrative and

vocational rehabilitation consulting services respectively. (R. 742-746, 753-756). While the language of the loan agreements indicates that Ms. White and Ms. Koslow "loaned [plaintiff] money," (R. 742, 753), the accompanying letters indicate that Ms. White and Ms. Koslow provided direct administrative and consultative services to plaintiff in anticipation of later repayment. (R. 743, 754). If plaintiff received only direct services pursuant to these agreements, and not cash or in-kind items that could be liquidated or otherwise used to obtain food or shelter, the advance of services does not qualify as income. See 20 C.F.R. § 416.1103(j).

For the aforementioned reasons, the Court finds that the ALJ's decision to classify each of the four advances to plaintiff as income for SSI purposes is not based upon substantial evidence.

## 2. Standard for Determining Whether the Purported Loans are *Bona Fide* for SSI Purposes

Based upon his evaluation of the evidence, the ALJ determined that the four transactions at issue are not *bona fide* loans for SSI purposes, and therefore constitute countable income of plaintiff. (R. 19). Plaintiff argues that the loans are *bona fide* because they impose an unqualified obligation of repayment and are enforceable under state law. (ECF No. 25, 2). On remand, the Court directs the ALJ to reconsider whether each

14

transaction pertaining to income per the discussion *supra* in section A.1. of this Opinion is a *bona fide* loan based upon application of the legal standards set forth herein.

A loan, whether consisting of cash or an in-kind advance in lieu of cash, is not treated as income for SSI purposes provided the loan is *bona fide*.[2] <u>See</u> 20 C.F.R. § 416.1103(f); SSR 92-8p. A *bona fide* loan is "an advance from lender to borrower that the borrower must repay, with or without interest." SSR 92-8p, 2. On the contrary, "[w]hen money or an in-kind advance in lieu of cash is given and accepted based on any understanding other than that it is to be repaid by the receiver, there is no loan involved for SSI purposes." <u>Id</u>., 3. A *bona fide* loan agreement may be oral or written, but must be "recognized as enforceable under State law." <u>Id</u>., 2. These requirements apply to "any commercial or noncommercial loan (between relatives, friends or others) that is recognized as enforceable under State law." <u>Id</u>.

In this case, the ALJ found that the loans to plaintiff do not "contain an acknowledgment of the obligation to repay" because the language of the written agreements makes repayment "contingent on future improvements in the claimant's financial circumstances." (R. 18). While The ALJ properly identified obligation to repay as a necessary element of a *bona fide* loan,

---

[2] Accordingly, "[f]ood and shelter provided to an individual under the terms of a *bona fide* loan agreement are not counted as in-kind support and maintenance ("ISM")," but rather a loan of ISM. POMS SI 00835.482.

he erred by focusing exclusively on the language of the written agreements without considering relevant case law and other pertinent facts.

While not binding upon this Court, cases from other Circuits interpreting the *bona fide* loan standard in the SSI context are persuasive. The Fifth Circuit Court of Appeals held in Hickman v. Bowen that in a case determining whether an advance constitutes a *bona fide* loan, the SSI applicant or recipient bears the burden of showing that the advance is "loaned to them in realistic anticipation of repayment, and that they indeed intend to repay that debt." 803 F.2d 1377, 1382 (5th Cir. 1986). This is consistent with traditional principles of contract law recognized in the Fourth Circuit; if the intent of the parties is to create a contract whereby one party transfers to the other a sum of money which that other agrees to repay absolutely, the transaction will be considered a loan without regard to its form. See United Virginia Factors Corp. v. Aetna Cas. and Sur. Co., 624 F.2d 814, 816 (4th Cir. 1980).

Addressing the existence of a *bona fide* loan in the SSI context in Ceguerra v. Secretary of Health & Human Services, the Ninth Circuit Court of Appeals similarly emphasized the intent of the parties to the loan agreement. 933 F.2d 735, 739-740 (9th Cir. 1991). In Ceguerra, an SSI recipient whose benefits had been terminated accepted support from her son under an oral

agreement to repay him when she won her appeal and obtained a retroactive benefit check. Id., 737. Responding to the ALJ's characterization of the advance as a gift, the Ninth Circuit stated that "the key element of a gift is the donor's intent to make a gift," and referenced statements from both Ceguerra and her son indicating that the support was not intended as a gift. Id., 740.

In addition, the Ceguerra Court did not treat the uncertainty of the event on which the parties predicated the obligation of repayment as a dispositive factor. Id., 740. Ceguerra's son based his expectation of repayment on a belief that the outcome of his mother's SSI case would be favorable, and both parties eventually signed statements indicating that Ceguerra would repay her son upon her receipt of retroactive SSI benefits. Id., 739. The Ceguerra Court reasoned that the lender's statement indicating his subjective belief that the borrower was obligated to repay the loan upon receipt of SSI benefits, coupled with his realistic belief that her benefits would be reinstated, was itself evidence of a contract. Id., 739. The Ninth Circuit reasoned that where the parties to the agreement had a reasonable expectation that the SSI claimant's benefits would be reinstated, the ALJ improperly assumed that support was advanced as a gift and not a loan. Id.

A borrower's acknowledgement of indebtedness and testimony that the borrower has since repaid the debt are additional factors which weigh in favor of existence of a *bona fide* loan in the SSI context.  Hassbrock v. Barnhart, 457 F.Supp.2d 736, 741 (S.D. Tex. 2006).  However, a vague loan agreement, lack of clear testimony from lenders regarding the loans, and a recipient's failure to give evidence of the loan amount, time period, and repayment terms are factors which weigh against existence of a *bona fide* loan.  Hassbrock v. Astrue, No. H-08-2606, 2009 WL 2007147, at *7 (S.D.Tex. July 1, 2009).

In determining that plaintiff's "obligation to repay the loans is contingent on future improvements in the claimant's financial circumstances," the ALJ confined his analysis to the debatable language of the written agreements and apparently did not consider other evidence in the record regarding the intent of the lenders and borrower.  See (R. 17-18).  The ALJ's strict interpretation of the language of the written agreements is inconsistent with the principles applied by courts when determining whether a loan is *bona fide* for SSI purposes.

As discussed *supra*, a loan agreement must also be "recognized as enforceable under State law" in order to be *bona fide* for SSI purposes.  SSR 92-8p, 2.  In his evaluation of the evidence, the ALJ did not discuss whether the loan agreements at issue are enforceable under state law.  Thus, the Court directs

the ALJ on remand to analyze whether the loans to plaintiff in this case constitute enforceable contracts pursuant to the governing state law.

**B. ALJ Valuation of Plaintiff's Income and Resources**

Although the ALJ concluded that plaintiff's income and resources exceed the statutory limit, he neglected to even present his calculations, much less explain them.  In the Social Security context, the ALJ is required to issue a written decision presenting findings of fact and reasons for his decision. 20 C.F.R. § 416.1453(a).  As the Seventh Circuit Court of Appeals has explained, "regardless of whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision . . ." <u>Steele v. Barnhart</u>, 290 F.3d 936, 941 (7th Cir. 2002).  On remand, the ALJ should present the basis for his factual finding that plaintiff's income and resources warrant termination of her SSI benefits.

As a preliminary matter, any items that are not properly classified as income or resources, such as administrative or vocational rehabilitation services, should not be counted for the purpose of determining plaintiff's SSI eligibility, regardless of whether they were advanced as *bona fide* loans. The ALJ should also not count as income any transactions that constitute *bona fide* loans. <u>See</u> 20 C.F.R. § 416.1103(f).

However, cash provided by a lender as a *bona fide* loan is the
borrower's resource if retained in the month following the month
of receipt.  See POMS § SI00810.020(B)(1)(a).

The rules for counting cash or in-kind income for the
purpose of determining SSI eligibility and benefit amount depend
upon whether the income is classified as earned or unearned.  20
C.F.R. § 416.1104.  Earned income consists of, *inter alia*, wages
and net earnings from self-employment.  20 C.F.R. § 416.1110.
Unearned income is "all income that is not earned income."  20
C.F.R. § 416.1120.  Due to the nature of the transactions at
issue, this matter pertains solely to unearned income.

For the purpose of determining SSI eligibility and benefit
amount, cash income generally includes the amount of currency
and the face value of checks received.  See POMS §
SI00810.020(A)(2)(a).  In-kind income is generally valued at its
current market value.  See 20 C.F.R. § 416.1111(d), 416.1123(c).
When an individual lives in his or her own household but
receives ISM from someone else, Social Security regulations use
the "presumed value rule" to value the ISM.  20 C.F.R. §§
416.1140-41.  Pursuant to this rule, the ISM received is
presumed to be worth a maximum value equal to one-third of the
Federal benefit rate, plus twenty dollars.  20 C.F.R. §
416.1140, 416.1124(c)(12).

## VI. Conclusion

Although the record suggests that plaintiff's income and resources likely exceed the statutory limit for SSI, the ALJ should examine each purported loan agreement independently on remand to determine which of the transactions constitute countable income and resources.  For any advance which would be income if given as a gift, the ALJ must apply the legal standards articulated herein to determine whether the transaction constitutes a *bona fide* loan.  Any income identified at this stage must be valued according to the applicable rules for cash and ISM.  In the event that any of the transactions at issue constitute *bona fide* loans, the ALJ must determine the extent to which retention into the month following receipt caused the advances to constitute countable resources.  In making these findings, the ALJ must adequately develop the record and articulate the factual basis for his decision.  Therefore, this Court hereby REMANDS this case to the Commissioner for further proceedings consistent with this letter order.

Sincerely yours,


/s/


Susan K. Gauvey
United States Magistrate Judge